# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

EMILY POWELL,                          )
                    Plaintiff,         )
                                       )
        v.                             )        CAUSE NO.:  2:10-CV-220-PRC
                                       )
REGENCY HOSPITAL OF NORTHWEST )
INDIANA, LLC and BEVERLY FOSTER,  )
in her individual capacity and official   )
capacity as Chief Executive Officer,    )
                    Defendants.         )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 58],

and Plaintiff's Motion for Partial Summary Judgment [DE 61], both filed September 19, 2011.

Both Motions have been fully briefed and are appropriately before the Court for ruling.

## PROCEDURAL BACKGROUND

On March 23, 2010, Plaintiff Emily Powell filed her Complaint in Lake County Superior

Court alleging four counts of employment discrimination against her prior employer, Defendant

Regency Hospital of Northwest Indiana, LLC, and her prior supervisor, Defendant Beverly Foster.

Defendants removed the action to this Court on June 1, 2010.  On September 13, 2011, Plaintiff filed

a notice with the Court entitled Plaintiff's Voluntary Dismissal of Only Count IV of Plaintiff's

Complaint.

On September 19, 2011, Defendants filed their Motion for Summary Judgment.  Plaintiff

filed her response on October 20, 2011, and Defendants filed their reply on November 7, 2011.  Also

on September 19, 2011, Plaintiff filed her Motion for Partial Summary Judgment along with a

Notice of Filing Records Under Seal.  The Notice and related documents were stricken for failure

to comply with the applicable rules for sealing documents.  On October 3, 2011, Plaintiff filed a

Motion to Seal.  On October 13, 2011, the Court denied the Motion but ordered Plaintiff to file redacted copies of two of her exhibits in accordance with Federal Rule of Civil Procedure 5.2. Plaintiff did not comply with this Court's Order and refiled the non-redacted documents along with her response to Defendants' Motion for Summary Judgment.  Documents containing impermissible information will be removed from the docket by separate Order.

Defendants filed their response to Plaintiff's Motion for Partial Summary Judgment on October 17, 2011, and Plaintiff filed her reply on November 3, 2011.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

2

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting

materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

In October, 2007, Plaintiff Emily Powell began working as Director of Referral Services for Defendant Regency Hospital of Northwest Indiana, LLC, a provider of long term acute care to ill patients requiring an extended hospital stay. Plaintiff was responsible for developing and managing Defendant Regency's marketing activities. She supervised two admissions coordinators and seven clinical liaison personnel and reported to the CEO, Defendant Beverly Foster.

On November 12, 2008, Plaintiff fired an employee without going through the appropriate channels for termination. As a result, she was placed on a performance improvement plan to be reviewed on January 31, 2009.

On December 10, 2008, Defendants approved FMLA leave for Plaintiff due to injuries she received in a car accident. Plaintiff's doctor's office provided a release to return to work dated December 29, 2008, with some limitations, including the restriction that she work only four hours a day for one week. On December 30, 2008, Defendant Foster sent Plaintiff an email indicating her approval of half-days for the next week. On January 5, 2009, Plaintiff returned to work and worked one week of four-hour days. Plaintiff's physician completed a medical certification stating that Powell could return to work on January 12, 2009, for ten-hour workdays with no restrictions.

On January 12, 2009, Plaintiff received a performance review from Defendant Foster. Plaintiff's performance evaluation included unsatisfactory rankings in a number of areas. Plaintiff also received a short form evaluation on which she received zero points for attendance, accompanied by the comment "several EID and FMLA-qualifying events." Plaintiff's performance improvement plan was extended until March 2009 because of Plaintiff's leave of absence in December 2008. Plaintiff received a pay raise in January 2009.

In January 2009, Defendant Foster instructed Plaintiff to issue a warning to one of the liaisons who reported to Plaintiff. Plaintiff complied, but opposed disciplining the employee.

During the first few months of 2009 Plaintiff made several complaints about Defendant Foster to Karen Porter, the Director of Human Resources for Defendant Regency. During one conversation, during which Plaintiff complained about not receiving a requested vacation because she had accrued insufficient paid time off, Plaintiff claims that Porter told her that the denial was Plaintiff's fault and that Plaintiff's FMLA leave was the "last straw."

During the first few months of 2009, several employees that reported to Plaintiff complained about her. On March 2, 2009, Plaintiff's performance improvement plan was extended, to be

5

reviewed on or before April 30, 2009. It included a number of additional performance issues that had not been previously included. Plaintiff did not receive bonuses for at least several of the months during which she was on a performance improvement plan. In March 2009, a medical director indicated that Plaintiff had not provided the gifts she was supposed to deliver on behalf of Defendant Regency. A case manager also complained about Plaintiff.

On April 2, 2009, Defendant Foster sent an email to Steve Draper, Defendant Regency's corporate Regional Manager, regarding Plaintiff's performance. She recommended that Plaintiff be terminated from her position with Defendant Regency and included a number of documents in support of her recommendation. Included in the documents are notations of Plaintiff's absences on four dates: January 21, February 6, March 16, and March 27. On April 7, 2009, Defendant Foster and Karen Porter terminated Plaintiff from her employment with Defendant Regency.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, received by the EEOC on June 29, 2009.

After she left the employ of Defendant Regency, Plaintiff applied for a new job. Plaintiff reports that the prospective employer asked her to provide an additional job reference because it was unable to obtain a reference from Defendant Regency. Plaintiff was ultimately hired by that employer.

## ANALYSIS

Plaintiff's Complaint includes four counts: Count I for FMLA interference and retaliation; Count II for Title VII Gender Discrimination and Retaliation; Count III for Title VII Retaliation, and Count IV for ERISA Interference. Defendants move for summary judgment on all four counts. Plaintiff seeks summary judgment in her favor on Counts I and III. The Court will consider each

6

of the counts in turn.

## A.    Count I: FMLA Interference

In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot establish all the elements of a claim of interference with Family Medical Leave Act ("FMLA") rights.  In particular, Defendants argue that Plaintiff cannot establish that she was entitled to intermittent FMLA leave beyond the week of January 5, 2009.  In her Motion,  Plaintiff argues that she is entitled to summary judgment on her claim of FMLA interference because the Defendants interfered with her substantive FMLA rights; namely, her need for additional intermittent leave for physical therapy and doctor's appointments after her return to work.[1]

The Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* permits eligible employees to take twelve workweeks of leave within a twelve-month period if they are unable to perform their job function as a result of a serious health condition.  29 U.S.C. § 2612(a)(1)(D).  In furtherance of these rights, the FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]."  *Id.* at 2615(a)(1).  Thus, the FMLA contemplates the interference theory of recovery asserted by Plaintiff in this case.  *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citation omitted).  An employer who violates § 2615 is "liable to any eligible employee affected" for compensatory

---

[1] The Court notes that a significant portion of Plaintiff's argument takes place in the footnotes to her briefs. Particularly as each brief barely falls within the page limits proscribed by Local Rule 7-1(e), it appears that this is an attempt to circumvent the Court's rules, an action decried by courts in this Circuit.  *See, e.g., Production & Maintenance Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp.*, 954 F.2d 1397, 1407 (7th Cir. 1992) ("We have repeatedly warned litigants and attorneys not to use textual footnotes to evade page limits.") (citations omitted); *Fleming v. County of Kane*, 855 F.2d 496, 498 (7th Cir. 1988) (explaining the imposition of sanctions when "petitioner's counsel merely moved enough text into single-spaced footnotes to leave essentially the same amount of excess verbiage in their brief").  The Court does not strike Plaintiff's briefs or footnotes at this time but warns Counsel for Plaintiff of the need to comply with the spirit of the applicable rules that govern conduct in this Court.

damages and "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion."  29 U.S.C. § 2617(a)(1).

To prevail on her claim for interference with FMLA rights, Plaintiff "must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled."  *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 689 (7th Cir. 2010) (citing *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009)).

Defendants argue that Plaintiff cannot demonstrate that she was entitled to intermittent FMLA leave after the week of January 5, 2009.  Plaintiff argues that upon her return to work she told Defendant Foster of her need for continuing physical therapy, and therefore her need for reduced hours, but that Defendant Foster threatened Plaintiff's job if she did not return to work full time.  Plaintiff argues that this satisfies the requirements of establishing interference with FMLA rights, and that she only asked her doctor to allow her to return to full time work because she feared that she would lose her job if she took additional half days.  Defendants argue that Plaintiff has presented no evidence that she was entitled to continued FMLA leave.

In order to succeed on her FMLA retaliation claim, Plaintiff must establish that she provided her employer with sufficient notice of her entitlement to and intent to take continued FMLA leave. Defendants sent a medical certification to Plaintiff's physician asking him to indicate Plaintiff's medical restrictions, if any.  The completed form, signed by Plaintiff's physician, indicates that Plaintiff was able to return to work on January 12, 2009, for ten hours per day with no work restrictions.  Even if Plaintiff did tell Defendant Foster that she continued to need to take time off

for therapy and other appointments, her verbal statements are contradicted by the physician's note provided to Defendants showing that Plaintiff could return to full-time work.  An assertion that she continued to need time off was insufficient to put Defendants on notice when it was contradicted by a doctor's note.  *See, e.g. Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591 (7th Cir. 2008) ("[The plaintiff's] treating physician specifically stated that [the plaintiff] had no work restrictions after May 12. . . .. [the plaintiff] had an obligation to show a serious health condition, and her general testimony that her condition was serious is insufficient to raise a genuine issue of material fact on this issue.") (citing *Haefling v. UPS*, 169 F.3d 494, 499 (7th Cir. 1999)); *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 952 (7th Cir. 2004) ("The requirement of notice is not satisfied by the employee's merely demanding leave.  [Sh]e must give the employer a reason to believe that [s]he's entitled to it.") (citations omitted); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001) ("employers . . . are entitled to the sort of notice that will inform them . . . that the FMLA may apply").

Even viewing the facts in the light most favorable to Plaintiff, she cannot establish that she provided Defendants with sufficient notice of her entitlement to and intent to take continued FMLA leave as required by the Act.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's FMLA interference claim.

**B.    Count I: FMLA Retaliation**

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for FMLA retaliation because Plaintiff cannot establish a causal connection between her exercise of FMLA rights and any of the adverse employment actions about which she complains.  Plaintiff moves for summary judgment on her FMLA retaliation claim, arguing that Defendants directly and

intentionally retaliated against her for taking leave.

The FMLA makes it unlawful to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Specifically, an employer is prohibited "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005) (recognizing that an employer cannot retaliate against an employee for taking FMLA leave). Moreover, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). The Seventh Circuit Court of Appeals has held that an FMLA retaliation claim can proceed under either the direct or indirect methods of proof. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008).

Plaintiff does not move for summary judgment using the indirect method and in her response to Defendants' arguments continues to proceed under the direct method, citing only the direct standard in her briefs. Accordingly, the Court will only analyze Plaintiff's FMLA retaliation claim using the direct method.

To succeed in her claim for FMLA retaliation using "the direct method, [Plaintiff] must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Caskey*, 535 F.3d at 593 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)). She can use either direct or circumstantial evidence. *Id.* "'Circumstantial' evidence is evidence that allows the factfinder to infer intentional discrimination by the decisionmaker, while 'direct' evidence proves the fact in question without reliance upon inference. Direct evidence usually involves some form of admission by the

decisionmaker." *Simpson v. Ofc. of the Chief Judge of the Cir. Ct.*, 559 F.3d 706, 717 (7th Cir. 2009) (quoting *Caskey*, 535 F.3d at 593) (quotation and other marks omitted).

Plaintiff alleges that she suffered two materially adverse actions: negative performance evaluations that led to lost bonuses and a continued performance improvement plan, and termination. The Court will examine each in turn.

1.    Negative Performance Evaluation

Defendants argue that a performance evaluation is not a materially adverse employment action, and therefore Plaintiff's claim that Defendants retaliated against her for taking FMLA leave by giving her a negative review must fail. Plaintiff argues that her negative performance review was an adverse employment action because it continued her performance improvement plan and caused Plaintiff financial harm by denying her bonus accruement for three months.

"[I]n order to be actionable, adverse actions must be materially adverse meaning more than a mere inconvenience or an alteration of job responsibilities." *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001)) (quotation marks and other citations omitted). The Seventh Circuit "ha[s] concluded that negative performance evaluations, standing alone, are not cognizable adverse employment actions." *Id.* at 686 (citations omitted). "There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action; otherwise every reprimand or attempt to counsel an employee could form the basis of a federal suit." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004) (citing *Sweeney v. West*, 149 F.3d 550, 556-57 (7th Cir. 1998); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996)); *see also Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (concluding that although the plaintiff's "negative

11

evaluation, written warnings, and placement on 'proof status' are putatively disciplinary measures, none 'resulted in tangible job consequences and therefore are not adverse employment actions'") (quoting *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (other citations omitted).

Plaintiff argues that the negative evaluation rose to the level of a materially adverse employment action because the consequence of the evaluation was to continue her performance improvement plan, and the continuance of that plan made her ineligible for a bonus. Defendants argue that Plaintiff remained eligible for a bonus until March. However, even if the evaluation in January made Plaintiff immediately ineligible for a bonus, it still would not make the evaluation a materially adverse employment action, since "lower performance ratings are not actionable unless they are accompanied by tangible job consequences. And the fact that the lower rating prevented her from a merit bonus is not enough to make it a materially adverse action." *Lapka v. Chertoff*, 517 F.3d 974 (7th Cir. 2008) (citations omitted). Regardless of when Plaintiff became ineligible for the bonus, "[t]he denial of one discretionary bonus . . . is [] not sufficient to dissuade a reasonable employee from engaging in protected activity and therefore cannot support [a plaintiff's] retaliation claim." *Palermo v. Clinton*, 437 Fed. Appx. 508, 511 (7th Cir. 2011).

Plaintiff's deposition testimony indicates that bonuses were discretionary, not automatic. She explained that approval of bonuses was a several-step process, requiring the authorization of a number of people, and stated, "Bonus eligibility was again not consistent." Pl. Ex. A at 156, 162 [DE 63-1 at 40, 42]. Furthermore, Plaintiff still received a pay raise after the negative evaluation. The negative evaluation did not end Plaintiff's career. To the contrary, to the extent that the evaluation caused a change in Plaintiff's benefits, the change was a *positive* employment action: an increase in Plaintiff's salary.

Plaintiff argues that even if she did not suffer from an adverse employment action, the Court should find that Defendant Foster caused substantial detriment to Plaintiff's employment, citing *Savino v. C.P. Hall Co.*, 199 F.3d 925, 932 (7th Cir. 1999), for this proposition. It is not entirely clear what proposition she believes her citation supports, as the page she refers to describes the Court's description of employer liability in hostile environment sexual harassment cases under Title VII in a situation where the employee suffered no tangible employment action. On the page following that cited by Plaintiff, the Seventh Circuit reiterates the standard described above, quoting the Supreme Court: "'A tangible employment action constitutes a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits.' Thus, a tangible employment action is akin to an adverse employment action, as courts have used the term." *Savino*, 199 F.3d at 933 (emphasis in original) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

The negative review and its consequences did not constitute a significant negative change in Plaintiff's employment status, whether that change is called an adverse employment action, a tangible employment action, or a substantial detriment to employment. Accordingly, Plaintiff cannot succeed on her FMLA retaliation claim on that basis.

2.     Termination

Unlike Plaintiff's negative evaluation, termination is an adverse employment action. *de la Rama,* 541 F.3d at 685 (citation omitted). Under the direct method of proving retaliation, a plaintiff may offer direct or circumstantial evidence. Direct evidence is that which would prove discriminatory intent without reliance on inference or presumption by the trier of fact. *Simpson*, 559 F.3d at 717. A plaintiff may also demonstrate a causal link by "constructing a convincing mosaic

13

of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quotation and quotation marks omitted).

Defendants argue that Plaintiff can show no causal connection between her FMLA leave and her termination. They argue that she was terminated because of performance issues discovered while she was on FMLA leave and that the comments made by Defendant Foster do not create a causal link between the alleged discrimination and the termination.

Plaintiff argues that she can succeed on her FMLA retaliation claim using the direct method because "[t]he evidence clearly shows that" Draper and Foster, the people Plaintiff identifies as making the decision to terminate her employment, "had at least one phone conversation about her leave," providing circumstantial evidence that they acted for a prohibited reason. Pl. Br. at 19 [DE 62]. However, Plaintiff does not include citations to supporting evidence in the text of her brief, leaving the Court to scour her Statement of Material Facts for some indication of what evidence Plaintiff is relying on. It appears that Plaintiff is referring to a conversation between Draper and Defendant Foster described in her Statement of Material Facts, citing to Foster's deposition as support. Pl. Br. at 13 [DE 62]. However, the page of Foster's deposition that Plaintiff cites is not included in Plaintiff's exhibits. *See* Pl. Ex. D [DE 63-4 at 31-32]. Therefore, the fact and contents of the conversation between Foster and Draper after the email was sent and the allegation of the timing of Defendant Foster's decision to terminate the Plaintiff will be disregarded by the Court as unsupported by evidence.

Plaintiff also argues that the email conversation between Foster and Draper establishes that Defendant Foster factored the Plaintiff's FMLA leave and other health-related absences into her

decision to terminate Plaintiff.  The email that Plaintiff cites in her Statement of Material Facts refers to four of Plaintiff's absences, for: a flat tire, her son's illness, her own strep throat, and her kidney stones.  Pl. Br. at 13 [DE 62]; Pl. Ex. EE [DE 63-29].  Defendant Foster asserts that she did not consider these absences in her decision to terminate Plaintiff.  Defendants argue that even if they were taken into account, the absences were not taken because of FMLA-qualifying health conditions and therefore could have been lawfully considered in her termination.  "For purposes of FMLA, 'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115."  29 CFR 825.113.  None of the reasons for Plaintiff's listed absences qualify as serious health conditions within the meaning of the FMLA..  Accordingly, if Defendant Foster considered these absences in her determination to terminate Plaintiff, she was not in violation of the FMLA, and the email cited by Plaintiff does not demonstrate any causal connection between Plaintiff's FMLA leave and her termination.

   Plaintiff also argues that Porter's comment to Plaintiff in January 2009 that "taking FMLA was the last straw" creates a connection between her leave and her termination.[2]  Defendants argue that Porter's comment does not provide a causal connection between her FMLA leave and termination because it was an ambiguous statement not made around the time of the discharge nor in reference to Plaintiff's termination.  Plaintiff appears to be arguing that Porter's comment was relaying something Defendant Foster said.  Even assuming that the comment was made by a decisionmaker or person otherwise in a position to influence the decision to terminate Plaintiff, the

---

[2] Plaintiff also argues in her briefs that Porter told Plaintiff that Defendant Foster would be looking for reasons to terminate Plaintiff.  As Defendants point out, Plaintiff does not include a citation to the record in her argument to support this comment, nor is it supported by the record evidence she cites to in her Statement of Material Facts. Accordingly, the Court will disregard the allegation.

15

remark is too remote both in time and subject to create a link with Plaintiff's termination four months later. *See, e.g., Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) ("isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus" unless they "are made by the decision-maker or one having input in a decision, and are made (1) around the time of, and (2) in reference to, the adverse employment action complained of'") (quotations, quotation marks, and citations omitted); *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) ("isolated, stray workplace remarks that are not clearly linked to the decision to terminate [the plaintiff]'s employment . . . cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question.") (quotations, quotation marks, and citations omitted).[3]

Plaintiff cannot demonstrate any direct evidence that she was terminated because of her FMLA leave, either to establish that she is entitled to summary judgment or to defeat the Defendants' motion.   Therefore, the Court turns now to the circumstantial evidence Plaintiff describes in support of her claim.

"'Circumstantial' evidence is evidence that allows the factfinder to 'infer intentional discrimination by the decisionmaker.'"   *Simpson*, 559 F.3d at 717 (quoting *Caskey*, 535 F.3d at 593).  Courts have recognized three types of circumstantial evidence.  *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008).  First, the most common "consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in

---

[3] To the extent that Plaintiff has included other allegations in her Statement of Material Facts that Foster made additional negative comments about FMLA leave or employees who take it, she does not include any argument about these comments in the body of her briefs and the Court therefore will not consider them.

the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 862 (7th Cir. 2007) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Second, the plaintiff can offer evidence that similarly situated employees outside the protected class received systematically better treatment. *Id.* "The third is evidence that the plaintiff was qualified for the job in question but passed over in favor of a person outside the protected class and that the employer's stated reason is a pretext for discrimination." *Petts*, 534 F.3d at 721 (citing *Hossack*, 492 F.3d at 862; *Troupe*, 20 F.3d at 736).

Plaintiff's arguments fall under the first type of circumstantial evidence: "bits and pieces from which an inference of discriminatory intent might be drawn." *Hossack*, 492 F.3d at 862. She accuses Defendant Foster of creating the problems that made it difficult for Plaintiff to effectively perform her job. In particular, she accuses Defendant Foster of causing several of the events which sparked complaints from Plaintiff's subordinates about Plaintiff and claims that the job expectations changed shortly before she was terminated. She also argues that the reasons provided by Defendant Foster for Plaintiff's termination were exaggerated and not uniformly enforced in the company.

Defendants argue that Plaintiff was terminated due to numerous problems with Plaintiff's performance, including allowing her subordinates to take time off without permission and refusing to follow a directive from her supervisor. Defendants also point to several occasions when Plaintiff's subordinates and other third parties complained about Plaintiff's work behavior. However, Defendant Foster was Plaintiff's supervisor, responsible for Plaintiff's performance review and, ultimately, the person who recommended that Plaintiff be terminated. Defendants have not produced sufficient evidence, when viewing the facts in the light most favorable to Plaintiff, that

Defendant Foster did not have any discriminatory intent.  However, neither has Plaintiff laid out sufficient evidence, viewed in the light most favorable to Defendants, from which the Court can definitively infer intentional discrimination.  Accordingly, summary judgment is inappropriate for either party on Plaintiff's claim that she was terminated in retaliation for taking FMLA leave.

3.   Damages

In her Motion for Summary Judgment, Plaintiff also argues that the Court should determine that Plaintiff is entitled to liquidated damages because Defendants acted in bad faith in interfering with Plaintiff's substantive FMLA rights.  Defendants argue that Plaintiff is not entitled to liquidated damages.

The FMLA provides: "Any employer who violates section 2615 of this title shall be liable to any eligible employee affected – (A) for damages equal to . . . an additional amount as liquidated damages equal to the sum of the amount" of lost wages plus interest.  29 U.S.C. § 2617(a)(1)(A).  To avoid paying liquidated damages, an employer must prove that the discriminatory actions were taken "in good faith and that the employer had reasonable grounds for believing that the act or omission" did not violate the FMLA.  *Id* .  Because there has not been a finding that Defendants violated § 2615, any consideration of liquidated damages under § 2617 is premature.

**C.   Count II: Gender Discrimination and Retaliation**

Defendants argue that Plaintiff's caregiver discrimination claim amounts to a "sex-plus" theory of discrimination, a theory that has not been recognized by the Seventh Circuit.  Furthermore, even if it were a recognized claim, Defendants argue that Plaintiff cannot establish a claim under either the direct or indirect method.  Plaintiff argues that written evidence demonstrates direct evidence of gender-plus discrimination and that she can establish a prima facie case of

18

discrimination under the indirect method.

    1.    <u>Caregiver Discrimination</u>

    As Defendants point out, the Seventh Circuit has not recognized the type of sex-plus theory of discrimination that Plaintiff urges this Court to adopt. *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563-64 (7th Cir. 2009) (citations omitted). This type of theory "hinges on disparate treatment based on sex in conjunction with another characteristic." *Id.* (citations omitted). However, if the Court does accept this theory of discrimination, "[i]n order to make out a case of sex discrimination without resorting to *McDonnell Douglas*, a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination." *Coffman*, 578 F.3d at 563 (citation omitted) (addressing a "sex-plus" theory of discrimination). If she is unable to meet that burden, then she may use the indirect burden-shifting method described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Sartor v. Spherion Corp.*, 388 F.3d 275, 278-79 (7th Cir. 2004).

    Defendants argue that Plaintiff is unable to put forth any direct evidence of caregiver discrimination and that her argument relies on inference or presumption. As described above, "[d]irect evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption. . . . Direct evidence is a distinct type of evidence that uniquely reveals intent to discriminate, which is a mental state." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005) (quotations omitted).

    In her response to Defendants' Motion for Summary Judgment, Plaintiff states that "Defendants took issue with [Plaintiff]'s prior EID days related to her caregiver responsibilities." Pl. Resp. Br. p. 19 [DE 72]. However, as Defendants note, Plaintiff does not include any citation

to the record or any supporting evidence in her argument.  In her Statement of Material Facts, Plaintiff refers to her performance evaluation and review claiming, with a citation to her deposition, that Defendant Foster told her she had taken too much caregiver time off, and notes that the comment "several EID . . . events" was written on her performance review.  Defendants argue that "EID days" are extended illness days given to employees for their own illnesses, not for caring for others.  The Court concludes that the mere mention of the fact that Plaintiff took days off for her own illness does not support a direct inference of discrimination, nor is it circumstantial evidence that Plaintiff was terminated for caring for others.

Furthermore, Defendant Foster's alleged comment to Plaintiff in January, 2009, that Plaintiff had "taken too much caregiver time off" is, as with the FMLA comments as described above, too remote both in time and subject to create a link with Plaintiff's termination four months later, even if the statement itself was undisputed.  Plaintiff fails to identify any other evidence that she was discriminated against for her role as caregiver, and accordingly cannot succeed through the direct method of establishing a sex discrimination claim.

Plaintiff also argues that she can demonstrate discrimination under the indirect *McDonnell Douglas* burden-shifting framework.  In order to carry her initial burden, Plaintiff must "demonstrate that 1) she was a member of a protected class; 2) she performed her job satisfactorily; 3) despite the satisfactory performance she suffered an adverse employment action; and 4) [Defendants] treated others outside the protected class more favorably than [Plaintiff] was treated."  *Grube v. Lau Indus.*, 257 F.3d 723, 728 (7th Cir. 2001) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

There is disagreement among courts that recognize sex-plus discrimination claims as to the appropriate comparator, and many have chosen to use a male as a comparator for gender-plus

20

discrimination claims.  *See, e.g., Philipsen v. Univ. of Mich. Bd. of Regents*, No. 06-CV-11977-DT, 2007 WL 907822, at *6, 2007 U.S. Dist. LEXIS 25898, at *21-22 (E.D. Mich. Mar. 22, 2007) (using a male comparator while noting that "[c]ourts are split, however, over whether the proper comparator may only include a person outside of the protected class who has the same 'plus characteristic' as the plaintiff (in this case, a male with young children) or whether the comparator may include any person (male or female) who lacks the 'plus' characteristic (in this case, a female without young children)").  Plaintiff argues that it is appropriate for the Court to adopt a sex-plus theory of discrimination as applied in circuits which require the employee to "demonstrate that . . . similarly situated women without young children were treated more favorably."  *Weightman v. Bank of New York Mellon Corp.*, 772 F.Supp.2d 693, 703 (W.D.Pa. 2011); Pl. Resp. Br. at 21 n. 30 [DE 72].  Despite the standard that she urges the Court to adopt, Plaintiff identifies a man, Sam Plumer, as the appropriate comparator.  Furthermore, she explicitly explains that "he did not take time off from work to care for children or relatives."  Pl. Resp. Br. at 20 [DE 72].  Her chosen comparator is neither a male who has taken time off to act as caregiver nor a woman who has not.

Plaintiff has failed to identify direct evidence of caregiver discrimination and has failed to identify a similarly-situated employee outside of the class of "female caregiver" to serve as comparator.  Accordingly, the Court need not determine whether a sex-plus theory of discrimination is an appropriate claim nor whether a male or female would be an appropriate comparator for this type of claim.  Defendants are entitled to summary judgment on Plaintiff's claim for caregiver discrimination under Title VII.

2.    Hostile Work Environment

In her Complaint, Plaintiff alleges that the caregiver discrimination she experienced created

a hostile work environment.  Defendants argue that the work environment Plaintiff describes falls short of a hostile work environment.

"An employer violates Title VII when discrimination based on sex . . . creates a hostile or abusive work environment." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir. 2001) (quoting *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998)) (quotation marks and other citations omitted).  In order "[t]o establish a claim of hostile work environment, [a plaintiff] must show that she was subjected to harassment so severe or pervasive that it altered the conditions of her employment" and " demonstrate that her workplace was both subjectively and objectively hostile." *McKenzie v. Milwaukee County*, 381 F.3d 619, 624 (7th Cir. 2004) (citations omitted). To make this determination on summary judgment, courts consider "the surrounding circumstances, including whether the discriminatory conduct was frequent or severe; whether the conduct was physically threatening or humiliating; and whether the conduct unreasonably interfered with her work performance. . . . Title VII is not a general code of workplace civility, nor does it mandate 'admirable behavior' from employers." *Id.* (citing *Haugerud*, 259 F.3d at 693).  Plaintiff does not include any argument in her briefs that the work environment was hostile.  Accordingly, the Court concludes that she is not making a hostile work environment claim.  To the extent that Plaintiff does intend to make such a claim, she has not identified any evidence that her work environment rose to the level of threat and humiliation.  Accordingly, Defendants are accorded summary judgment on all of the allegations in Count II of Plaintiff's Complaint.

**D.      Count III: Title VII Retaliation**

Both parties move for summary judgment on Plaintiff's Title VII retaliation claims.  As with

her other retaliation claims, for Plaintiff to "surviv[e] summary judgment on her retaliation claim using the direct method, [she must] show '(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two.'" *Overly v. Keybank Nat'l Ass'n*, 662 F.3d 856, 866 (7th Cir. 2011) (quoting *Kodl v. Bd. of Educ. Sch. Dist. 45*, *Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007)).

Defendants move for summary judgment on the grounds that (1) Plaintiff's complaints to Porter about Defendant Foster were not statutorily protected activity; and (2) failure to provide a job reference was not a materially adverse employment action because it did not cause any harm to Plaintiff. Plaintiff moves for summary judgment on the grounds that her filing of an EEOC charge was statutorily protected activity and that the Defendants' failure to provide a job reference was a materially adverse employment action. In response to Defendants' Motion, she also argues that her complaints about Defendant Foster were statutorily protected activity.

"An 'adverse employment action' is an employment action that is likely to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 558 (7th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). "The definition of an adverse employment action is generous, but it is still subject to certain limitations. At the very least, [the plaintiff] must show some quantitative or qualitative change in the terms or conditions of h[er] employment" and "the employee must complain of some action on the employer's part that causes her to suffer a real harm." *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901-902 (7th Cir. 2003) (citations omitted); *see also Dell v. Indiana-American Water Co.*, No. IP 01-1339-C-M/K, 2003 WL 1877351, at *4, 2003 U.S. Dist. LEXIS 6151, at *12 (S.D. Ind. Mar. 11, 2003) ("post-employment acts of retaliation must have a

nexus to employment or impinge on future employment prospects for a former employee to be able to sue under Title VII") (citation omitted).  Negative employment references can be adverse employment actions when they are "the dissemination of false reference information that a prospective employer would view as material to its hiring decision." *Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006).

Defendants argue that because Plaintiff was able to obtain another job, she did not suffer any detriment to her employment opportunities and cannot succeed on her claim for retaliation.  Failure to provide a reference does not rise to the level of disseminating false information, and Plaintiff was able to obtain the job she was seeking .  Therefore, the lack of job reference from Defendants did not impinge on her job prospects or otherwise cause her to suffer any "real harm."  Accordingly, regardless of what action Plaintiff is alleging was statutorily protected, her claim cannot succeed.

**E.      Count IV: ERISA Interference**

Plaintiff argues that her ERISA claims were dismissed by the Court on September 13, 2011, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), and thus Defendants' request for summary judgment on this claim should be denied.  Defendants argue that the voluntary dismissal of Count IV does not comply with the Federal Rules and therefore ask that they be granted summary judgment on the merits of the claim.

Federal Rule of Civil Procedure 41(a)(1)(A) provides that "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1)(A).  Defendants filed an Answer on June 8, 2010; after that time only a stipulation of dismissal would be appropriate.  On September 13, 2011,

Plaintiff filed a document entitled "Plaintiff's Voluntary Dismissal of Only Count IV of Plaintiff's Complaint." The document was signed only by Plaintiff; therefore, Defendants are correct that the requested dismissal did not comply with the Federal Rules and did not effect the dismissal of Count IV. However, as both parties agree that this claim should no longer be a part of the litigation, the Court dismisses Count IV with prejudice.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment [DE 58], and **DENIES** Plaintiff's Motion for Partial Summary Judgment [DE 61]. The Court **ORDERS** that Summary Judgment is awarded to Defendants on Count II and III of the Complaint and on Plaintiff's FMLA Interference claims in Count I. The Court further **ORDERS** that Count IV of Plaintiff's Complaint, for ERISA Interference, is hereby **DISMISSED with prejudice**. Accordingly, the only claim remaining before the Court is Plaintiff's claim in Count I of her Complaint that she was terminated in retaliation for taking leave under the Family Medical Leave Act of 1993.

The Court hereby **REAFFIRMS** the final pretrial conference set for **March 23, 2012, at 9:00 a.m.**, and the trial set for **April 30, 2012**.

So ORDERED this 22nd day of March, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record